UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RYAN A., | ) |
| | ) |
|    Plaintiff | ) |
| | ) |
| v. | )    1:20-cv-00366-JAW |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| | ) |
|    Defendant | ) |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the November 29, 2019 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 13-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of fibromyalgia; inflammatory arthritis; obesity; depressive disorder or major depression, moderate, recurrent; and anxiety disorder or generalized anxiety disorder. (R. 13.) The ALJ further found that despite his impairments, Plaintiff has the residual functional capacity (RFC) to perform light work except that he can frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; frequently handle and finger with the bilateral upper extremities; but cannot tolerate interaction with the public, and is limited to performing three to four step tasks. (R. 18.)

Based on the RFC finding, Plaintiff's work experience, and the testimony of a vocational expert, the ALJ concluded that Plaintiff can perform substantial gainful activity existing in the national economy, including representative occupations of bench assembler, car wash attendant, and checker I. (R. 22.) The ALJ determined, therefore, that Plaintiff was not disabled.[2]

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y*

---

[2] Plaintiff previously applied for disability benefits, claiming an onset date of July 7, 2014. (R. 62.) That application was denied on January 31, 2017. (R. 62-72.) Plaintiff does not challenge that decision. (Statement of Errors, ECF No. 17, at 2 n.1.) The ALJ found that the pertinent period of disability for the instant claim therefore was February 1, 2017 through the date of his decision. (R. 10.)

*of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues that the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence, and that the ALJ erred when he failed to address evidence contained in a post-hearing vocational affidavit.

### A. RFC Assessment

State agency medical consultant Donald Trumbull, M.D., determined that Plaintiff could perform work at the medium exertional level with certain limitations. (R. 84.) Dr. Trumbull also found that fibromyalgia was "[s]uspected but unconfirmed" under the standards set forth in Social Security Ruling 12-2p, 2012 WL 3104869. (R. 82.) Upon reconsideration, Benjamin Weinberg, M.D., reached a similar conclusion, noting the lack of evidence that would significantly alter Dr. Trumbull's original assessment. (R. 88-90.)

The ALJ found the conclusions of Dr. Trumbull and Dr. Weinberg persuasive because they were generally consistent with the overall record, but the ALJ observed that the "evidence after the State Agency review could support slightly greater limitations than the state consultants assessed," and giving Plaintiff the benefit of the doubt, the ALJ

3

"further limited [Plaintiff] to the light exertion range." Plaintiff contends the ALJ based his RFC determination on an incomplete record and improperly interpreted raw medical data.

An "ALJ must measure the claimant's capabilities, and 'to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.'" *Manso-Pizzaro*, 76 F.3d at 17 (quoting *Santiago v. Sec'y of Health & Human Servs.*, 944 F.2d 1, 7 (1st Cir. 1991)). In general, an ALJ may not substitute his or her judgment for that of an expert, nor translate raw medical data into an RFC assessment. *See, e.g., Nguyen*, 172 F.3d at 35; *Manso-Pizzaro*, 67 F.3d at 16. An ALJ is not, however, "precluded from rendering common-sense judgments about functional capacity based on medical findings, so long as [he or she] does not overstep the bounds of a lay person's competence and render a medical judgment."). *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990).

Here, the ALJ assessed the medical record, including Plaintiff's reports of activity and complaints, and Plaintiff's testimony at the administrative hearing. The ALJ ultimately determined that some of Plaintiff's subjective complaints were not consistent with his activity level. For instance, the ALJ wrote, "despite complaints of fatigue, [Plaintiff] was swimming and walking." (R. 18-19.) The ALJ, however, did not disregard Plaintiff's statements entirely. In fact, when the ALJ found that Plaintiff was limited to the light exertion range, the ALJ wrote: "[Plaintiff] noted that a recent drive to Boston did aggravate his pain. To give claimant any benefit of the doubt, the undersigned has further limited the claimant to the light exertion range." (R. 19.)

4

In assessing a more restrictive RFC than the state agency consultants assessed, therefore, the ALJ credited in part Plaintiff's reports and did not impermissibly interpret raw medical data. *See Kristina D.B. v. Berryhill*, No. 1:18-cv-00088-JHR, 2019 WL 1407407, at *4 (D. Me. Mar. 28, 2019) (ALJ did not interpret raw medical data in crediting plaintiff's allegations of difficulties in social functioning). The fact that the ALJ gave Plaintiff the benefit of the doubt as to his statements regarding his symptoms and included restrictions more favorable to Plaintiff than the experts was not error. *Id.*; *Bowden v. Colvin*, No. 1:13-CV-201-GZS, 244 WL 166496, at *4 (D. Me. Apr. 25, 2014); *see also Lee v. Berryhill*, No. 2:17-cv-00040-JHR, 2018 WL 793595, at *5 (D. Me. Feb. 8, 2018) (ALJ can give the claimant the "benefit of the doubt" and recognized limitations in the RFC finding beyond those expressed in an opinion that the ALJ might otherwise rely on as substantial evidence of a less restrictive RFC); *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *3 (D. Me. Jan. 5, 2015) ("A claimant may not obtain a remand on the basis of an RFC that is more favorable than the evidence would otherwise support.").

Plaintiff's contention that the ALJ could not permissibly rely on the findings of Drs. Trumbull and Weinberg because their findings are based on an incomplete record due to a subsequent diagnosis of fibromyalgia (R. 818) also fails. Generally, "a DDS non-examining expert's report cannot stand as substantial evidence in support of an administrative law judge's decision when material new evidence has been submitted [that] call[s] the expert's conclusions into question." *Eaton v. Astrue*, Civil No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008). An ALJ may, however, rely on experts' reports despite later-submitted evidence when the new evidence "does not call into

question their conclusions." *Emily A. v. Saul*, No. 2:19-cv-00071-JDL, 2020 WL 2488576, at *7 (D. Me. May 14, 2020). Where the unseen portions of the record "are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the ALJ," there is no material change in the record evidence that would call a consultant's conclusions into question. *Id*. (citing *Robert L. v. Berryhill*, No. 1:17-cv-00348-JDL, 2018 WL 3599966, at *6 (D. Me. July 27, 2018)).

Plaintiff argues that the state agency experts could not accurately assess his symptoms of pain and weakness because they did not understand the cause of the symptoms. The record reflects that the agency consultants were aware of the symptoms generated by Plaintiff's condition, including diffuse joint pain and weakness, and considered them in making their findings. The ALJ wrote that the records submitted after the state agency consultants' review "appeared to support no significant, if any, worsening" of Plaintiff's symptoms. (R. 14.) The ALJ explained further that "[r]egardless of the actual etiology," he "considered the claimant's symptoms in formulating the enclosed [RFC] whether due to fibromyalgia or an inflammatory process." (*Id.*) Furthermore, as the ALJ noted, Plaintiff's provider, Kristine Sanden, D.O., reported that Plaintiff's chronic pain in his upper and lower extremities and joints may "be related to poly-inflammatory arthritis although there is disagreement" among Plaintiff's treating rheumatologists. (R. 14, referencing R. 826.) "Insofar as the reported symptoms of fibromyalgia, 'musculoskeletal pain, stiffness, and fatigue,' were reflected in Plaintiff's medical records before the formal diagnosis, the formal diagnosis is 'consistent with the preexisting record,' and the ALJ was not precluded from relying on the consultants' opinions." *Jaime B. v. Saul*, 2:19-cv-00563,

2020 WL 6562058, at *3 (D. Me. Nov. 9, 2020) (citations omitted).

## B. Vocational Evidence

Plaintiff argues the ALJ erred when he failed to address challenges to the testimony of Jill Brown, the vocational expert who testified at hearing (the VE), which challenges were raised in the post-hearing affidavit of Plaintiff's vocational expert, David Meuse. Plaintiff asserts the ALJ did not adequately address Mr. Meuse's challenge to the VE's testimony regarding the number of jobs available nationally for the bench assembler and checker I positions. Plaintiff also argues the ALJ failed to reconcile an inconsistency Mr. Meuse asserts exists between the definition of the car wash attendant position, set forth in the Dictionary of Occupational Titles (DOT), and the ALJ's determination that Plaintiff cannot tolerate interactions with the public.

At step 5 of the evaluation process, the Commissioner has the burden to establish that the jobs a claimant can perform exist in the national economy in significant numbers, giving particular attention to the claimant's age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v), (g)(1); *Goodermote v. Sec'y of HHS*, 690 F.2d 5, 7 (1st Cir. 1982). This burden is typically addressed through a combined reliance on the Medical-Vocational Guidelines, 20 C.F.R. Part 202, Subpart P, Appendix 2, and the testimony of a vocational expert, who is asked to consider one or more hypothetical RFC findings. *Goodermote*, 690 F.2d at 7; *Arocho v. Sec'y of HHS*, 670 F.2d 374, 375 (1st Cir. 1982). The Supreme Court recently noted that when offering such testimony, vocational experts "may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job

7

placement or career counseling.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152-53 (2019) (quoting SSR 00-4p, 65 Fed. Reg. 75760 (2000)). The Court further observed that the sufficiency of the evidence threshold necessary to support an ALJ's factual determinations, including the assessment of vocational expert testimony, "is not high." *Id.* at 1154.

With respect to Mr. Meuse's opinion on the issue of the number of bench assembler and checker I jobs in the national economy, the ALJ explained that VE "testified that her source for job numbers was the Bureau of Labor Statistics. Most notably, this vocational expert provided a rather detailed explanation of how she arrived at the numbers."[3] (R. 10.) The ALJ determined that he has the authority to take administrative notice of reliable job information or data from various governmental and other sources, including the sources questioned by Plaintiff. (R. 11, citing 20 C.F.R. §§ 404.1566(d), 416.966(d).) The ALJ

---

[3] Plaintiff's counsel had the following exchange with the VE at the November 5, 2019, administrative hearing:

> Q What is the source of your job numbers?
> A The Bureau of Labor Statistics.
> Q And does the BLS provide numbers by DOT code?
> A In some cases, it does. But most cases, it does not.
> Q So, in this case – I'm sorry, I'm waiting for something to load on my computer. The assembler job, is there more than one DOT code within the BLS grouping?
> A Yes. In that grouping, there's 1,587.
> Q Distinct DOT codes?
> A Yes.
> Q So, how do you go from over 1,500 distinct DOT codes to identifying that there are 69,000 bench assembler jobs?
> A The bench assembler is unskilled, SVP: 2. And I look at all of the unskilled, SVP: 2 jobs in the OES group because they're all equal in terms of experience and entry level. And I count up the number of those jobs that are alike in that way, and that was 434. So, I divide that group, 434, into the total of 1,587 and come out with a percentage. And then I use that percentage to multiply against the U.S. BLS national number and come out with 69,000.

(R. 55-56.)

found the VE "['] used established and heretofore reliable methods and data and formed professional opinions consistent with the methodology utilized by contemporaries and other such professionals in relying upon sources, materials, and data that are not subject to further challenge until such time as either Congress or the Courts see fit to change them.[']" (R. 11, quoting *Babb v. Astrue*, No. 2:10-cv-49-DBH, 2020 WL 5465839, at *4 (D. Me. Dec. 29, 2010.))  The ALJ thus considered Mr. Meuse's opinion, found it unpersuasive, and explained why he found the VE's testimony persuasive.  The ALJ was not required to do anything further. The ALJ permissibly relied on the VE's testimony to find that sufficient jobs existed in the national economy that Plaintiff can perform.

As to the car wash attendant position, the ALJ wrote that Mr. Meuse

> opined that as defined in the Dictionary of Occupational Titles (DOT), the Car Wash Attendant job would be eliminated because the claimant was limited to no public interaction[4] …. Interestingly, Mr. Meuse did not opi[ne] that the Car Wash Attendant job could be perform[ed] with no public contact based on personal experience, job analyses, or education, belying perhaps that this position has changed since the DOT. Reasonably, a customer might have no actual contact with the car washer having paid for services prior to picking up their clean car.  Further, there are likely some settings, such as [a] car dealership or detailed shop, in which the vehicle might logically be washed in a service bay, in no vicinity of customers, then brought up to a waiting area for pickup. Seemingly, many such establishments, for safety and liability reasons, might logically limit customer access to these areas.  Commonsensically, there appeared to be a

---

[4] The DOT describes the car wash attendant position as performing any combination of the following duties:

> Directs patron to entrance of wash station or guides automobile onto wheel track of automatic mechanism. Cleans front and rear of vehicle, using brush and detergent. Activates wash mechanism and observes operation to detect equipment malfunctions. Notifies supervisor when malfunctions occur.  Receives payment from customer or issues change for coin-operated equipment.  Fills detergent and wax tanks, lubricates equipment, and replaces spray jets and hoses as needed.  May vacuum interior of automobile.

DICOT 915.667-101, 1991 WL 687869.

9

myriad of scenarios in which this position might be performed with essentially no public interaction.

(R.10-11.) As the ALJ explained, the VE stated that the DOT does not address the extent of public contact the position requires.[5] Plaintiff argues that there is an obvious conflict between the VE's testimony and the DOT definition of the position.

Social Security Rule 00-4p "imposes an *affirmative obligation* on [ALJs] to (i) inquire whether there is any conflict between [VE] testimony and the DOT, (ii) elicit a reasonable explanation for any apparent conflict, and (iii) resolve said conflict, regardless of how it was identified." *Burton v. Astrue*, No. 2:11-cv-174-GZS, 2012 WL 1184425, at *4 (D. Me. Apr. 6, 2012), *rec. dec. adopted*, 2012 WL 1415616 (D. Me. Apr. 24, 2012) (emphasis in original). The obligation to inquire, however, "pertains only to *apparent* conflicts, [and] a claimant waives a claim of failure to identify and resolve [such] a conflict … unless he or she 'can show that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance[.]'" *Welch v. Astrue*, No. 1:11-cv-384-GZS, 2012 WL 3113148, at *7 (D. Me. July 11, 2012) (quoting *Burton*, 2012 WL 1184425, at *4 n.3) (emphasis in original).

In support of his argument, Plaintiff points to the possible job duties listed in the DOT as evidence that the DOT conflicts with the VE's testimony that Plaintiff could perform the job of a car wash attendant. Plaintiff's argument is unpersuasive as "[p]ossible duties listed in DOT job descriptions are not sufficient to generate an apparent conflict."

---

[5] The VE testified that her "testimony was consistent with the DOT with the exception of no public contact …. And my opinion is based on my overall knowledge, training, and experience." (R. 55.)

10

*Travis H. v. Saul*, 1:19-cv-00374-NT, 2020 WL 5819535, at *4 (D. Me. Sept. 30, 2020); *see also, e.g., Alley v. Astrue*, No. 09-6360B-W, 2010 WL 4386516, at *7 ("rendering personal assistance" only one of a number of potential tasks of the job of housekeeper/cleaner, so no inconsistency with limitation of avoidance of frequent contact with the general public).

Even if an apparent conflict existed and even if the ALJ did not adequately address the conflict, remand is not warranted. There are sufficient jobs available in the national economy that Plaintiff could perform if only the bench assembler (69,000 nationally) and checker I (24,000 nationally) positions are considered.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 28th day of October, 2021.